The Honorable George Hopkins State Senator 78 Harver Hills Malvern, AR 72104
Dear Senator Hopkins:
You have requested an Attorney General opinion concerning the transfer of students from one school to another.
You indicate that your question arises out of a situation involving a family that resides in the Sparkman School District and whose three children attended the Sparkman schools. You state that the oldest of the children was raped while attending school. You further state that neither the prosecutor nor the school district took any action against the perpetrator, on the grounds that student testimony was conflicting as to whether the intercourse was consensual. This child was removed from the Sparkman school and was home schooled. The three children later enrolled in the Harmony Grove School District, with the consent of the Sparkman schools. Sparkman later revoked its consent, citing the fact that the three children are Caucasian, and Harmony Grove is a primarily Caucasian school district, whereas Sparkman is primarily African-American. After Sparkman revoked its consent, the Harmony Grove School District withdrew the children from enrollment.
In light of this scenario, you have asked:
 Can the Sparkman School District legally transfer these three white students to the Harmony Grove School District, on the grounds of "hardship," such as the rape-related situation at Sparkman?
It is my opinion that the students in question can transfer to the Harmony Grove School District if their transfer complies with the requirements of the particular statute under which the transfer is sought, and if the transfer complies with statutory and regulatory guidelines for maintaining the proper racial balance in the relevant school districts.
Several statutes, each of which I will discuss below, authorize transfers of students to school districts other than the district in which they reside. These statutes do not focus on particular "grounds" for transfer (such as hardship). Rather, they simply allow for transfers if certain conditions are met. Transfers under some of these statutes are subject to the requirement that racial balances be maintained.
The primary source of authority for transfer to a district other than the district in which the transferring student lives is the Public School Choice Act of 1989 (codified at A.C.A. § 6-18-206). This Act allows generally for such transfers, provided that the transfer does not adversely affect the desegregation of either district. The Act sets forth the following requirements for determining compliance with this desegregation limitation:
 (g) The provisions of this section and all pupil choice options created hereby are subject to the following limitations:
 (1) No student may transfer to a nonresident district where the percentage of enrollment for the student's race exceeds that percentage in his resident district except in the circumstances set forth in subdivision (2) of this subsection;
 (2) A transfer to a district is exempt from the restriction set forth above if all districts within a county have voted to participate in choice and the transfer is between two (2) districts within a county, and if the black and white percentages of school enrollment in both the sending and receiving district remain within an acceptable range of the county's overall black and white percentages of school population as set forth by the Department of Education;
 (3) The Department of Education shall, by the filing deadline each year, compute the black and white percentages of each county's public school population from the October Annual School Report and shall then compute the acceptable range of variance from those percentages for school districts within each county. In establishing the acceptable range of variance, the department is directed to use the remedial guideline established in Little Rock School District v. Pulaski County Special School District of allowing an overrepresentation or underrepresentation of black or white students of one-fourth (1/4) or twenty-five percent (25%) of the county's racial balance;
 (4) A transfer is exempt from the restriction set forth in subdivision (1) of this subsection if each school district within the county does not have a critical mass of minority students of more than ten percent (10%) of any single race;
 (5) In any instance where the foregoing provisions would result in a conflict with a desegregation court order or a district's court-approved desegregation plan, the terms of the order or plan shall govern;
A.C.A. § 6-18-206(g).
You indicate that the percentage of Caucasian enrollment in the Harmony Grove School District (the receiving district) exceeds African-American enrollment. Assuming that this statement is accurate, Section (g)(1), above, will require that because the students in question are Caucasian, these students can transfer to Harmony Grove only if the exemptions in Sections (g)(2) or (g)(4) apply.
Section (g)(4) will apply if no school district in the county has a critical mass of minority students of more than 10% of any one race. Whether this is true is a question of fact that can be determined by consulting with the Department of Education.
The Department of Education must also be consulted in order to determine whether the exemption of Section (g)(2) applies. The Department of Education is required to maintain calculations of the racial balances of the various counties' public school populations and the acceptable range of variance from those percentages for the school districts within the county. Whether the transfer from Sparkman to Harmony Grove would place either school district outside this acceptable range is a question of fact that is readily determined by reference to the Department of Education's calculations.
If it is determined factually that either the exemption of Section (g)(2) or of Section (g)(4) above applies, thus allowing transfer under the Public School Choice Act, the students must then comply with the other requirements of the Act, which are stated as follows:
 (b)(1)(A) Before a pupil may attend a school in a nonresident district, the pupil's parent or guardian must submit an application to the nonresident district. This application must be postmarked not later than April 17 of the year in which the pupil would begin the fall semester at the nonresident district. However, the nonresident district may accept applications until July 1 of the year in which the pupil would begin the fall semester at the nonresident district if the July 1st acceptance date would further the desegregation efforts of the district.
 (B) Within sixty (60) days of the receipt of an application from a nonresident pupil seeking admission under the terms of this section, a participating district shall notify the parent or guardian and the resident district in writing as to whether the pupil's application has been accepted or rejected. If the application is rejected, the nonresident district must state in the notification letter the reason for rejection.
 (2) The school board of any participating district must adopt, by resolution, specific standards for acceptance and rejection of applications. Standards may include the capacity of a program, class, grade level, or school building. Nothing in this section requires a school district to add teachers or classrooms or to in any way exceed the requirements and standards established by existing law. Standards may not include an applicant's previous academic achievement, athletic, or other extracurricular ability, handicapping conditions, English proficiency level, or previous disciplinary proceedings.
 (3) A school board may, by resolution, determine that it will not admit any nonresident pupils to its schools pursuant to this section.
 (c) The responsibility for transportation of a student from his resident school district to a nonresident school district shall be borne by the student. The resident district may transport the student to the district boundary or to a point agreeable to the parent or the nonresident district within either the resident or nonresident district and count that student in the resident district's calculation for transportation funding. The nonresident district may provide transportation from the resident district's boundary or from a point agreeable with the parent or the resident district within either the resident or nonresident district to a school in the nonresident district and count that student in the nonresident district's calculation for transportation funding; provided, however, that the nonresident district shall at no time be required to provide transportation for students transferring under this section.
A.C.A. § 6-18-206(b)(c).
Another source of authority for transfer is A.C.A. § 6-18-203. Transfer under that statute would be available to the students in question if one of the following conditions obtains:
(1) The students' parent or guardian owns and resides on a tract of land located partially in the Harmony Grove School District, and partially in the Sparkman School District; or
(2) The students' parent or guardian is employed by the Harmony Grove School District.
A.C.A. § 6-18-203(a)(b).
If either of these conditions is true in the situation you have described, the students can transfer to the Harmony Grove School District without regard to racial balance concerns, unless Harmony Grove is found by a court to be unlawfully segregated. A.C.A. § 6-18-203(b)(2).
After July 1, 2000, another source of authority for transfer will be A.C.A. § 6-18-307. Under this statute, transfer is allowed if the student's parent or guardian lives at least fifteen miles from the school in the resident district and within seven miles of a school in the adjoining district. If this is the case, the student must petition the board of directors of the resident district for the transfer, and the adjoining district must agree in writing to accept the transfer.
Another source of authority under which the students may be able to transfer to the Harmony Grove School District is A.C.A. § 6-18-316. This statute requires the student to petition for the transfer, and the two school districts must enter into an agreement for the transfer. The student must also comply with the tuition and review requirements of this statute. A.C.A. § 6-18-316(f)(g).
It should be noted that transfers under A.C.A. § 6-18-316 are subject to the restriction of A.C.A. § 6-18-317, which states:
 (a) Boards of directors of local school districts are prohibited from granting legal transfers in the following situations:
 (1) Where either the resident or the receiving district is under a desegregation-related court order or has ever been under such a court order; and
 (2) The transfer in question would negatively affect the racial balance of that district which is or has been under such a court order.
 (b) Each form filed with the Department of Education reporting a legal student transfer must be accompanied by an affidavit signed by each member of both school boards stating that the transfer does not violate the prohibition set forth in subsection (a) of this section.
 (c) If the transfer fails to comply with subsection (b) of this section, the Department of Education shall withhold, from each district, state aid in an amount equal to that to be generated by the student in question in the respective districts.
A.C.A. § 6-17-317.
It appears from the available pertinent case law that the courts, in determining whether the racial balance in school districts has been negatively affected within the meaning of this statute, may consider factors such as the motive behind a transfer that resulted in racial imbalance. This factor appears to have influenced the federal district court's decision in Edgerson v. Clinton, LR-C-91-538. The court there noted the prohibition of A.C.A. § 6-18-317, but found that because the racial imbalance in question in that case was brought about by such factors as natural demographic change, the transfers were not impermissible. The district court's decision in Edgerson was affirmed by the 8th Circuit Court of Appeals in Edgerson v. Clinton, 86 F.3d 833
(8th Cir. 1996). Accord, Lee v. Lee County Bd. of Educ., 639 F.2d 1243
(5th Cir. 1981).
I therefore conclude that transfer may be permissible under A.C.A. §6-18-316 — even if the racial balance is affected — if it can be factually established that the transfer in question is not based upon a racially discriminatory intent.
Finally, it should be noted that it may be possible for the students in question to attend the Harmony Grove schools part time under the authority of A.C.A. § 6-18-204. This statute allows students to attend a school in another school district for the purpose of enrolling in courses that would constitute no more than 50% of the classes taken by them during the school day. This arrangement is available only if the courses taken at the other school district are not available in the student's home school district, and are required in order for the student to meet his "educational objectives." A.C.A. § 6-18-204. This statute also allows students to attend other school districts for the purpose of taking advantage of alternative education programs, vocational centers, or community-based education programs pursuant to a compact between the resident district and the foreign district. Id. If the students should choose to take advantage of the authority of this statute, they should be cognizant of the tuition requirements and other requirements set forth therein. Id.
The foregoing discussion indicates that there are various sources of authority under which students may transfer to a school district other than the district in which they reside. Each of these sources of authority contains its own specific requirements and restrictions. None appears to contain a "hardship" provision that specifically envisions the situation you have described. Nevertheless, as indicated by the discussion above, the students on whose behalf you have presented your request may be permitted to transfer if they can meet the requirements of any of these statutes.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh